UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION


NICHOLAS SCOTT SAPP,         ]
                                     ]
      Plaintiff,              ]
                                     ]
v.                               ]     No. 3-09-0581
                                   ]     JUDGE HAYNES
                                   ]
CSX TRANSPORTATION, INC.     ]
                                   ]
      Defendant.          ]


M E M O R A N D U M

      Plaintiff, Nicholas Scott Sapp, filed this action under the Federal Employers Liability Act ("FELA"), 45 U.S.C. § 51 et seq., against Defendant, CSX Transportation, Inc., asserting claims of negligence and negligence per se. Plaintiff's claims are that Defendant failed to provide Plaintiff with a reasonably safe place to work by failing to remove vegetation adjacent to its railroad track in violation of 49 C.F.R. § 213.37 and that the Defendant violated its policy in maintaining vegetation alongside its track, causing Plaintiff to trip and suffer injury.

      Before the Court are the following motions: (1) Defendant's motion for summary judgment (Docket Entry No. 33); (2) Plaintiff's motion for partial summary judgment (Docket Entry No. 36); (3) Plaintiff's motion to strike (Docket Entry Nos. 45 and 52) the declarations of Mark Gennette, Roy Dean and Edward English as well as the related documents; and (4) Defendant's motion for permission to respond to the issue of mitigation of damages (Docket Entry No. 49).

      In his motion for partial summary judgment, Plaintiff contends that his injury was caused by Defendant's failure to remove vegetation adjacent to its track in violation of 49 C.F.R. § 213.37 and

Defendant's own policy; that Defendant cannot assert a defense of contributory negligence; and that Defendant lacks proof that Plaintiff failed to mitigate his damages.

In its motion, Defendant contends, in sum: (1) that the vegetation did not cause Plaintiff to trip; (2) that Defendant did not owe any duty to maintain vegetation alongside out-of-service industry sidetracks; (3) that the Federal Railroad Administration ("FRA") regulation does not apply to vegetation alongside out-of-service industry sidetracks; and (4) if applicable the FRA specifically excludes industry track from its regulations.

In its motion to strike, Plaintiff argues that (1) Defendant admitted that it managed, operated and a had a duty to maintain the sidetrack; (2) Defendant did not timely identify Gennette as a witness nor produce the documents attached to Gennette's declaration; (3) Dean and English improperly rely upon Gennette's declaration and documents; (4) Dean and English's opinions are improper interpretations of FRA regulations; (5) that all three declarations and Dean's preliminary report are unsworn;[1] (6) Dean's preliminary report (Docket Entry No. 43, Exhibit 1) is an "advocacy" report and not a qualifying expert opinion; and (7) the documents referenced in Dean's report are not attached to that report.

In its motion on mitigation, Defendant asserts that the deposition of Plaintiff's vocational expert, David S. Gibson, establishes Defendant's affirmative defense that Plaintiff failed to mitigate his damages.

For the reasons set forth below, the Court concludes that Defendant's motion for summary judgment should be granted; Plaintiff's motion for partial summary judgment should be granted on

---

[1]Defendant has since filed amended declarations (Docket Entry Nos. 53, 54 and 58) correcting the problem, and therefore this argument is moot.

the issue of mitigation but otherwise denied; Plaintiff's motions to strike should be granted in part and denied in part; and Defendant's motion for permission to respond to the issue of mitigation of damages should be denied.

## A. PLAINTIFF'S MOTIONS TO STRIKE

In his amended complaint, Plaintiff specifically alleged that "the track and roadbed were under the management, maintenance, operation and control of, and in the exclusive possession of Defendant and Defendant had a duty to maintain them in a proper and safe condition and to provide Plaintiff with a safe place to work," see (Docket Entry No. 13, Amended Complaint at ¶ 6). In its Answer (Docket Entry No. 20), Defendant admitted to these allegations by not denying them, stating, "CSXT admits that it has a non-delegable duty to provide Plaintiff with a reasonably safe place to work. CSXT also admits that it is responsible for maintaining the track and roadbed in its control." Id. at ¶ 6. In Section II of its Answer, Defendant states, "CSXT denies every allegation contained in Plaintiff's Complaint that is not previously admitted or denied."

Federal Rule of Civil Procedure 8(b)(1)(B) requires a defendant's answer to respond to each allegation. In its Answer, Defendant admitted its general duty to provide Plaintiff with a reasonably safe place to work and to maintain the track and roadbed in its control. In its answer to ¶ 6 of Plaintiff's amended complaint, Defendant did not admit that it controlled the track in question because ¶ 6 did not reference the track in question.

In his second motion to strike, Plaintiff asserts that Defendant did not identify Mark Gennette as a witness nor disclose the documents attached to Gennette's declaration in violation of Fed. R. Civ. P. 26(a)(1) and the Court's case management order (Docket Entry No. 25). In his declaration, Gennette, Defendant's director of contract management, refers to a contract dated on October 23,

1981, between Defendant and Ozburn-Hessey Storage Company for the construction, maintenance and operation of a sidetrack located on Defendant's property. (Docket Entry No. 34, Exhibit 3, Gennette Declaration at ¶¶ 1, 4). Gennette's declaration attaches the contract, a supplemental agreement and Defendant's letter offering a renewal of that agreement.

According to the agreement, Defendant was responsible for the maintenance of the track from the switch point to clearance point, a total of 157 feet, and Ozburn-Hessey was to maintain the remainder of the track that it owned. Id. at ¶ 4; Exhibit A at ¶ 4. The supplemental agreement dated September 25, 1987, provided that Ozburn-Hessey would pay the expense of maintaining the first 157 feet of the sidetrack. Id., Exhibit A at p. 10. This agreement was not renewed and was cancelled on February 15, 2003. Id. at ¶ 6.

Plaintiff contends that Defendant failed to produce these documents and to identify the witnesses to these agreements that the Defendant knew or should have known that it may rely. If Defendant had disclosed these witnesses and contracts, Plaintiff contends additional written discovery, depositions of additional witnesses, or joinder of the property owner for maintenance of the sidetrack would have occurred. Defendant admits its nondisclosure of Gennette or the documents in question, but explains that it "did not realize that the fact that the Ozburn-Hessey track was out-of-service was at issue in this case." (Docket Entry No. 55, Response at 2).

Because Defendant did not produce the documents attached to Gennette's declaration nor identify the witnesses to the agreements in violation of the Court's case management order, the Court concludes that Gennette's declaration and the attached documents should be stricken. Further, to the extent that Dean and English rely on Gennette's declaration and the attached documents, those portions of Dean's and English's declarations are likewise stricken.

Plaintiff next asserts that the remainder of Dean's and English's declarations are improper interpretations of regulations and should be stricken. English, who has over fifty years of experience in the railroad industry, was employed by the FRA from 1972 to 2001 and served as Director of Office of Safety and Assurance and Compliance for the FRA from 1989 to 2001. (Docket Entry No. 58, English Declaration at ¶¶ 2-3). In that position, English directed a multi-level staff responsible for FRA's nationwide safety and regulatory enforcement. Id. at ¶ 5. Since 1972 English was personally involved in the drafting of all track safety FRA standards. Id. at ¶ 6. Dean, who has 35 years of experience in railroad engineering, was employed by CSX as Chief Engineer, Maintenance of Way, until his retirement in 2000. (Docket Entry No. 53, Dean Declaration at ¶ 3). In 1996 Dean also worked on the Railroad Safety Advisory Committee's track working group that reviewed and revised FRA Track Safety Standards that became effective in September 1998. Id. at ¶ 5.

To be admissible, expert testimony must "assist the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702. Legal conclusions by experts invade the province of the Court. Bammerlin v. Navistar Intern. Transp. Corp., 30 F.3d 898, 900 (7th Cir. 1994) ("The meaning of federal regulations is not a question of fact, to be resolved by the jury after a battle of experts. It is a question of law, to be resolved by the court."). Much of English's and Dean's declarations involve reciting FRA regulations and reaching legal conclusions and should be stricken, with one exception. As experts in the railroad industry and as among the drafters of the applicable FRA Track Safety standards, the Court concludes that English's and Dean's opinions on railroad procedures are not legal opinions. Haager v. Chicago Rail Link, LLC., 232 F.R.D. 289, 294-95 (N.D. Ill. 2005). Therefore, Dean and English may opine that based on their experiences with "side tracks, like the Ozburn-Hessey track," that they "have never been considered part of the general

railroad system of transportation." (Docket Entry No. 53, Dean Declaration at ¶ 12; Docket Entry No. 58, English Declaration at ¶ 14). The remainder of their opinions on tracks as not subject "to the requirements of Section 213, including Section 213.37," relating to vegetation, are legal conclusions and should be stricken.

Lastly, Plaintiff contends that Dean's preliminary report does not assist the trier of fact because there is no unique, specialized, or scientific analysis in his report. Plaintiff also objects to Dean's report as an "advocacy" report, reciting and arguing facts in favor of Defendant and lacking documents referenced in his report. Defendant responds that Dean's report is on subjects that are beyond the knowledge of the jury, notably track safety standards, standard practices of Maintenance of Way employees, and the FRA's enforcement of regulations.

Fed. R. Civ. P. Rule 56(e)(1) provides that "If a paper or part of a paper is referred to in an affidavit, a sworn or certified copy must be attached to or served with the affidavit." Therefore, "[a]n affidavit that does not satisfy these requirements is subject to a motion to strike and will not be considered by the Court in ruling upon a motion for summary judgment." Giles v. University of Toledo, 241 F.R.D. 466, 469 (N.D. Ohio 2007). A court should use a "'a scalpel, not a butcher knife'" in resolving a motion to strike. Id. (citation omitted).

The recitation of facts set forth in Dean's report provides context for Plaintiff's injury. However, the factual narrative is unnecessary as the events surrounding the accident can be established through lay witnesses. Therefore, those portions relating to the factual narrative are stricken.

As to the failure to attach documents to Dean's report, the Court strikes those portions of Dean's report that rely on the documents cited in his report, but that are not in the record. These

documents include those numbered eight through sixteen and the American Railway Engineering and Maintenance-of-Way Association Manual for Railway Engineering that are listed in Dean's report as "Materials Received And Reviewed." <u>See</u> (Docket Entry No. 54, Exhibit 1 at pp. 2-3.

In sum, for deciding the motions for summary judgment, the Court will consider Dean's testimony based on his personal experience as Chief Engineer, Maintenance of Way, as to the general job duties, practices and customs associated with Maintenance of Way employees as well as describing the type of work Plaintiff was performing on the day of his injury. <u>See generally id</u>. at pp. 8-9. The Court will not consider Dean's ultimate conclusion that Plaintiff was not alert and was not paying attention when Plaintiff tripped over the rail, given Plaintiff's admission in his deposition. Dean's testimony on this issue "improperly addresses matters within the understanding or common knowledge of the average juror or invades the province of the jury." <u>United States v. Thomas</u>, 74 F.3d 676, 684 n.6 (6th Cir. 1996), <u>abrogated</u> <u>on</u> <u>other</u> <u>grounds</u> <u>by</u> <u>Morales v. American Honda Motor Co., Inc.</u>, 151 F.3d 500 (6th Cir. 1998).

### B. DEFENDANT'S MOTION TO RESPOND TO MITIGATION OF DAMAGES

Defendant seeks to file a brief response to Plaintiff's motion for partial summary on Plaintiff's failure to mitigate damages. Defendant asserts that on July 26, 2010, at the earliest date available, Defendant deposed Plaintiff's vocational and economic expert, David S. Gibson, and requested an expedited transcript of that deposition. According to Defendant, Gibson's deposition establishes Defendant's affirmative defense that Plaintiff failed to mitigate damages. Plaintiff responds that Defendant has not shown good cause for filing a late response and that Defendant did not comply with Fed. R. Civ. P. 56(f) nor timely seek a continuance of the deadline to respond. In addition, Plaintiff asserts that Defendant had evidence of his mitigation before the deadline.

In his deposition, Gibson answered affirmatively that he did not believe that Plaintiff was totally disabled and that there were jobs that Plaintiff could perform. (Docket Entry No. 49, Exhibit 1 at p. 57). Gibson was then asked, "You saw Dr. Shibayama say there are jobs he could do?", to which Gibson answered, "Yes." Id. Yet, this testimony of Plaintiff's employability was earlier provided by Plaintiff's treating physician, Dr. Shibayama, in an earlier deposition. The Court concludes that the Defendant has not demonstrated good cause for failing to present this mitigation evidence in a timely fashion, given the prior disclosure of Gibson who could have been deposed earlier. Moreover, the Defendant asserted Plaintiff's failure to mitigate as an affirmative defense in its Answer (Docket Entry No. 20, ¶ V), but did not respond to Plaintiff's motion for partial summary judgment on that issue.

Accordingly, the Court concludes that the Defendant failed to show good cause for its failure to conduct discovery and to respond timely, and Defendant's motion for permission to respond to the issue of mitigation of damages is denied.

## C. FINDINGS OF FACT[2]

Plaintiff worked as a foreman repairing railroad track for Defendant. On July 25, 2006, Plaintiff and his crew were assigned to repair a section of track on Defendant's mainline. (Docket Entry No. 44, Plaintiff's Response to Defendant's Statement of Undisputed Facts, at ¶ 1). Plaintiff

---

[2]Upon a motion for summary judgment, the factual contentions are viewed in the light most favorable to the party opposing the motion for summary judgment. Duchon v. Cajon Co., 791 F.2d 43, 46 (6th Cir. 1986). As will be discussed infra, upon the filing of a motion for summary judgment, the opposing party must come forth with sufficient evidence to withstand a motion for directed verdict, Anderson v. Liberty Lobby, 477 U.S. 242, 247-52 (1986), particularly where there has been an opportunity for discovery. Celotex Corp. v. Catrett, 477 U.S. 317 (1986). Because there are not any material factual disputes, this section constitutes findings of fact under Fed. R. Civ. P. 56(d).

parked his truck in a parking lot at Ozburn-Hessey adjacent to an out-of-service industry track, known as the old Hoskins track. (Docket Entry No. 42, Defendant's Response to Plaintiff's Statement of Undisputed Facts at ¶1; Docket Entry No. 34, Exhibit 2, Price Deposition at pp. 45, 52 84-85). There, Plaintiff and his crew loaded their jacks into a backhoe to be carried to the work site. (Docket Entry No. 37, Exhibit 4, Peacock Deposition at pp. 19, 27).

After completing the repairs, Plaintiff returned to his truck, walking down the center of the out-of-service industry track. (Docket Entry No. 44 at ¶¶ 2-3). Because the backhoe had a flat tire and had to leave, Plaintiff carried his jack that weighed about 55 pounds, as he made his return trip to the parking lot. (Docket Entry No. 42, Defendant's Response to Plaintiff's Statement of Undisputed Facts, at ¶ 5). According to Plaintiff, he walked down the middle of the industry track because the vegetation was thick on both sides of the track. (Docket Entry No. 34, Exhibit 1, Sapp Deposition at p. 46). Plaintiff was looking up at the 18-wheelers in the parking lot as he stepped over the rail and tripped on either the rail or a tie bud, causing injury to his back. (Docket Entry No. 44 at ¶¶ 4-6; Docket Entry No. 34, Exhibit 1, Sapp Deposition at pp. 49, 56). Plaintiff testified that "We never could figure out what I tripped over." (Docket Entry No. 34, Exhibit 1, Sapp Deposition at p. 56). The rail on which Plaintiff believes he tripped was no higher than other rail that Plaintiff has worked on in the past. (Docket Entry No. 44 at ¶ 5). There was no vegetation where Plaintiff tripped. Id. at ¶ 7. Plaintiff also testified that track gangs frequently "tied up" their equipment on the sidetrack and that a big machine called a "tamper" "was always" parked on the sidetrack. (Docket Entry No. 56, Exhibit 3, Sapp Deposition at pp. 58-60). Mike Dimitre testified that the tamper had been there for "years and years." (Docket Entry No. 37, Exhibit 6, Dimitre Deposition at p. 65).

Plaintiff admits that Defendant did not instruct him where to park his work truck on the day of the incident. (Docket Entry No. 44 at ¶ 8). Also, as the crew's foreman, Plaintiff decided where to park the work truck, how to return the tools to his work truck. Id. at ¶ 10. Plaintiff admits that he could have avoided walking between the rails of the out-of-service industry track by either driving his work truck to the area where the tools were found or walking to the nearby road crossing. Id. at ¶ 11. Plaintiff could have also called his supervisor's cell phone, if he had a question about how to perform the operation safely. Id. at ¶ 12.

James Parrott, Defendant's engineer of track for its Nashville Division since January 7, 2004, testified that the Ozburn-Hessey sidetrack has not been in service since he has been employed by Defendant. (Docket Entry No. 53, Parrott Declaration at ¶¶ 2, 4. During Parrott's tenure, Defendant did not utilize the Ozburn-Hessey sidetrack for the movement nor storage of rolling stock or freight traffic. Id. at ¶ 5. W. O. Price, who was Defendant's Roadmaster responsible for the upkeep of track and track inspection, assigned Plaintiff's work and testified that railcars did not come down the Ozburn-Hessey sidetrack that was "blocked and red tagged out of service." (Docket Entry No. 37, Price Deposition at pp. 8-9, 17, 45-46). Mike Dimitre, a track inspector who inspects mainline and industry tracks for possible defects in the track, also testified that the Ozburn-Hessey sidetrack was out-of-service and had been "red tagged," signifying that "the track is out of service, they cannot put any kind of freight, any kind of cars in there, or there is a piece of equipment already sitting in that track, or there's something wrong with that track . . . something that would be unsafe, to run a piece of equipment or a car off in there." (Docket Entry No. 56, Exhibit 2, Dimitre Deposition at pp. 70-71).

According to Roy Dean, the Defendant's chief engineer for its maintenance of way, "[t]he work of maintaining the track structure requires maintenance of way employees to walk between the rails on a daily basis. It is necessary for them to step over the rails quite frequently." (Docket Entry No. 54, Exhibit 1, at 9). Defendant's experts, Dean and Edward English, opined that based on their years of experience in the railroad industry and with FRA Track Safety Standards, "side tracks, like the Ozburn-Hessey track, have never been considered part of the general railroad system of transportation." (Docket Entry No. 53, Dean Declaration at ¶ 12; Docket Entry No. 58, English Declaration at ¶ 14).

In interrogatory 10, Defendant asked Plaintiff to identify any duties, regulations, guidelines, standards, etc. that he believes Defendant violated. In response, Plaintiff only identified 49 C.F.R. § 213.37. (Docket Entry No. 44, at ¶¶ 18-19).

## D. CONCLUSIONS OF LAW

"The very mission of the summary judgment procedure is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Advisory Committee Notes on Rule 56, Federal Civil Judicial Procedure and Rules (West Ed. 1989). Moreover, "district courts are widely acknowledged to possess the power to enter summary judgment *sua sponte*, so long as the opposing party was on notice that [he] had to come forward with all of [his] evidence." Celotex Corp. v. Catrett, 477 U.S. 317, 326 (1986); accord, Routman v. Automatic Data Processing, Inc., 873 F.2d 970, 971 (6th Cir. 1989).

In Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986), the United States Supreme Court explained the nature of a motion for summary judgment:

> Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories,

and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." By its very terms, this standard provides that the mere existence of <u>some</u> alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no <u>genuine</u> issue of <u>material</u> fact.

<u>As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.</u> Factual disputes that are irrelevant or unnecessary will not be counted.

477 U.S. at 247-48 (emphasis in the original and added in part). Earlier the Supreme Court defined

a material fact for Rule 56 purposes as "[w]here the record taken as a whole could not lead a rational

trier of fact to find for the nonmoving party, there is no `genuine issue for trial.'" <u>Matsushita</u>

<u>Electrical Industrial Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986) (citations omitted).

A motion for summary judgment is to be considered after adequate time for discovery.

<u>Celotex</u>, 477 U.S. at 326 (1986). Where there has been a reasonable opportunity for discovery, the

party opposing the motion must make an affirmative showing of the need for additional discovery

after the filing of a motion for summary judgment. <u>Emmons v. McLaughlin</u>, 874 F.2d 351, 355-57

(6th Cir. 1989). <u>But</u> <u>see</u> <u>Routman v. Automatic Data Processing, Inc.</u>, 873 F.2d 970, 971 (6th Cir.

1989).

There is a certain framework in considering a summary judgment motion as to the required

showing of the respective parties, as described by the Court in <u>Celotex</u>:

Of course, a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact. . . . [W]e find no express or implied requirement in Rule 56 that the moving party support its motion with affidavits or other similar materials negating the opponent's claim.

Celotex, 477 U.S. at 323 (emphasis deleted).

As the Court of Appeals explained, "[t]he moving party bears the burden of satisfying Rule 56(c) standards." Martin v. Kelley, 803 F.2d 236, 239, n. 4 (6th Cir. 1986). The moving party's burden is to show "clearly and convincingly" the absence of any genuine issues of material fact. Sims v. Memphis Processors, Inc., 926 F.2d 524, 526 (6th Cir. 1991)(quoting Kochins v. Linden-Alimak, Inc., 799 F.2d 1128, 1133 (6th Cir. 1986)). "So long as the movant has met its initial burden of 'demonstrat[ing] the absence of a genuine issue of material fact,' the nonmoving party then 'must set forth specific facts showing that there is a genuine issue for trial.'" Emmons, 874 F.2d at 353 (quoting Celotex and Rule 56(e)).

Once the moving party meets its initial burden, the United States Court of Appeals for the Sixth Circuit warned that "the respondent must adduce more than a scintilla of evidence to overcome the motion [and]. . . must 'present affirmative evidence in order to defeat a properly supported motion for summary judgment.'" Street v. J.C. Bradford & Co., 886 F.2d 1472, 1479 (6th Cir. 1989)(quoting Liberty Lobby). Moreover, the Court of Appeals explained that:

> The respondent must "do more than simply show that there is some metaphysical doubt as to the material facts." Further, "[w]here the record taken as a whole could not lead a rational trier of fact to find" for the respondent, the motion should be granted. The trial court has at least some discretion to determine whether the respondent's claim is "implausible."

Street, 886 F.2d at 1480 (citations omitted). See also Hutt v. Gibson Fiber Glass Products, 914 F.2d 790, 792 (6th Cir. 1990) ("A court deciding a motion for summary judgment must determine 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'") (quoting Liberty Lobby).

If both parties make their respective showings, the Court then determines if the material

factual dispute is genuine, applying the governing law.

> More important for present purposes, <u>summary judgment will not lie if the dispute</u>
> <u>about a material fact is "genuine," that is, if the evidence is such that a reasonable</u>
> <u>jury could return a verdict for the nonmoving party.</u>

> . . . .

> Progressing to the specific issue in this case, we are convinced that <u>the inquiry</u>
> <u>involved in a ruling on a motion for summary judgment or for a directed verdict</u>
> <u>necessarily implicates the substantive evidentiary standard of proof that would apply</u>
> <u>at the trial on the merits.</u>  If the defendant in a run-of-the-mill civil case moves for
> summary judgment or for a directed verdict based on the lack of proof of a material
> fact, <u>the judge must ask himself not whether he thinks the evidence unmistakably</u>
> <u>favors one side or the other but whether a fair-minded jury could return a verdict for</u>
> <u>the plaintiff on the evidence presented.</u>  The mere existence of a scintilla of evidence
> in support of the plaintiff's position will be insufficient; there must be evidence on
> which the jury could reasonably find for the plaintiff.  <u>The judge's inquiry, therefore,</u>
> <u>unavoidably asks whether reasonable jurors could find by a preponderance of the</u>
> <u>evidence that the plaintiff is entitled to a verdict -- "whether there is [evidence] upon</u>
> <u>which a jury can properly proceed to find a verdict for the party producing it, upon</u>
> <u>whom the onus of proof is imposed."</u>

<u>Liberty Lobby</u>, 477 U.S. at 248, 252 (citation omitted and emphasis added).

> It is likewise true that:
> In ruling on [a] motion for summary judgment, the court must construe the evidence
> in its most favorable light in favor of the party opposing the motion and against the
> movant.  Further, the papers supporting the movant are closely scrutinized, whereas
> the opponent's are indulgently treated.  It has been stated that: `The purpose of the
> hearing on the motion for such a judgment is not to resolve factual issues.  It is to
> determine whether there is any genuine issue of material fact in dispute. . . .'

<u>Bohn Aluminum & Brass Corp. v. Storm King Corp.</u>, 303 F.2d 425, 427 (6th Cir. 1962) (citation

omitted).  As the Court of Appeals stated, "[a]ll facts and inferences to be drawn therefrom must be

read in a light most favorable to the party opposing the motion." <u>Duchon v. Cajon Co.</u>, 791 F.2d 43,

46 (6th Cir. 1986).

The Sixth Circuit further explained the District Court's role in evaluating the proof on a summary judgment motion:

> A district court is not required to speculate on which portion of the record the nonmoving party relies, nor is it obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim. Rule 56 contemplates a limited marshalling of evidence by the nonmoving party sufficient to establish a genuine issue of material fact for trial. This marshalling of evidence, however, does not require the nonmoving party to "designate" facts by citing specific page numbers. Designate means simply "to point out the location of." Webster's Third New InterNational Dictionary (1986).
>
> Of course, the designated portions of the record must be presented with enough specificity that the district court can readily identify the facts upon which the nonmoving party relies; but that need for specificity must be balanced against a party's need to be fairly apprised of how much specificity the district court requires. This notice can be adequately accomplished through a local court rule or a pretrial order.

InterRoyal Corp. v. Sponseller, 889 F.2d 108, 111 (6th Cir. 1989). Here, the parties have given some references to the proof upon which they rely. Local Rules 56.01(b)-(d) require a showing of undisputed and disputed facts.

In Street, the Court of Appeals discussed the trilogy of leading Supreme Court decisions, and other authorities on summary judgment and synthesized ten rules in the "new era" on summary judgment motions:

1. Complex cases are not necessarily inappropriate for summary judgment.

2. Cases involving state of mind issues are not necessarily inappropriate for summary judgment.

3. The movant must meet the initial burden of showing "the absence of a genuine issue of material fact" as to an essential element of the non-movant's case.

4. This burden may be met by pointing out to the court that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case.

5. A court should apply a federal directed verdict standard in ruling on a motion for summary judgment. The inquiry on a summary judgment motion or a directed verdict motion is the same: "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."

6. As on federal directed verdict motions, the "scintilla rule" applies, i.e., the respondent must adduce more than a scintilla of evidence to overcome the motion.

7. The substantive law governing the case will determine what issues of fact are material, and any heightened burden of proof required by the substantive law for an element of the respondent's case, such as proof by clear and convincing evidence, must be satisfied by the respondent.

8. The respondent cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must "present affirmative evidence in order to defeat a properly supported motion for summary judgment."

9. The trial court no longer has the duty to search the entire record to establish that it is bereft of a genuine issue of material fact.

10. The trial court has more discretion than in the "old era" in evaluating the respondent's evidence. The respondent must "do more than simply show that there is some metaphysical doubt as to the material facts." Further, "[w]here the record taken as a whole could not lead a rational trier of fact to find" for the respondent, the motion should be granted. The trial court has at least some discretion to determine whether the respondent's claim is "implausible."

Street, 886 F.2d at 1479-80 (citations omitted).

The Court has distilled from these collective holdings four issues that are to be addressed upon a motion for summary judgment: (1) has the moving party "clearly and convincingly" established the absence of material facts?; (2) if so, does the plaintiff present sufficient facts to establish all the elements of the asserted claim or defense?; (3) if factual support is presented by the nonmoving party, are those facts sufficiently plausible to support a jury verdict or judgment under the applicable law?; and (4) are there any genuine factual issues with respect to those material facts under the governing law?

Section 51 of FELA imposes liability upon any common carrier engaged in interstate commerce for injuries caused for

> . . . damages to any person suffering injury while he is employed by such carrier . . . for such injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier, or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves, or other equipment.

45 U.S.C. § 51.

For a prima facie showing under FELA, a plaintiff must prove that: (1) he was injured within the scope of his employment; (2) his employment was in furtherance of the defendant's interstate transportation business; (3) the defendant was negligent; and (4) the defendant's negligence played some part in causing the injury for which the plaintiff seeks compensation under FELA. Van Gorder v. Grand Trunk W. R.R., 509 F.3d 265, 269 (6th Cir. 2007). A plaintiff must "present more than a scintilla of evidence to create a jury question on the issue of employer liability, but not much more." Aparicio v. Norfolk & W. Ry., 84 F.3d 803, 810 (6th Cir. 1996) (overruled on other grounds). The parties do not contest the first two elements of the prima facie case, but Defendant contends that Plaintiff's motion does not show any negligence by the Defendant nor the cause of Plaintiff's injury.

"Negligence under FELA is a question of federal law, which generally turns on common law principles of negligence and injury." Wilhelm v. CSX Transp., Inc., 65 Fed. Appx. 973, 976 (6th Cir. May 29, 2003). For a FELA claim the plaintiff must "'prove the traditional common law elements of negligence: duty, breach, foreseeability, and causation.'" Adams v. CSX Transp., Inc., 899 F.2d 536, 539 (6th Cir. 1990) (citation omitted). Yet, a "'relaxed standard of causation' applies, under which 'the test of a jury case is simply whether the proofs justify with reason the conclusion that employer negligence played any part, even the slightest, in producing the injury or death for which

17

damages are sought.'" Wilhelm, 65 Fed. Appx. at 976 (quoting Rogers v. Mo. Pac. R.R. Co., 352

U.S. 500, 506 (1957)). Yet, "the relaxed causation standard under FELA does not affect [the

plaintiff's] obligation to prove that [the defendant] was in fact negligent. FELA does not lessen a

plaintiff's burden to prove the elements of negligence." Van Gorder, 509 F.3d at 269 (citation and

footnote omitted). Moreover, a plaintiff may not recover simply because he was injured in the

course of his employment on the railroad. Consol. Rail Corp. v. Gottshall, 512 U.S. 532, 543 (1994)

("FELA does not make the employer the insurer of the safety of [its] employees while they are on

duty. The basis of [its] liability is [its] negligence, not the fact that injuries occur.").

> Under FELA, a railroad has a duty to provide its employees with a reasonably safe
> workplace; this does not mean that a railroad has the duty to eliminate all workplace
> dangers, but only the "duty of exercising reasonable care to that end."

> . . . .

> A railroad breaches its duty to its employees when it fails to use ordinary care under
> the circumstances or fails to do what a reasonably prudent person would have done
> under the circumstances to make the working environment safe. That is, a railroad
> breaches its duty when it "'knew, or by the exercise of due care should have known'
> that prevalent standards of conduct were inadequate to protect [the plaintiff] and
> similarly situated employees." A railroad must act reasonably and use ordinary care
> to protect its employees.

Van Gorder, 509 F.3d at 269-70.

## E. NEGLIGENCE PER SE CLAIM

Plaintiff contends that Defendant was negligent per se when the Defendant breached its duty

of care by failing to remove vegetation adjacent to its railroad track in violation of 49 C.F.R. §

213.37 and violated its policy to maintain vegetation alongside its track. Defendant denies any duty

to maintain vegetation adjacent to an out-of-service industry track under 49 C.F.R. § 213.37 or as

a general duty under 45 U.S.C. § 51.

The Federal Railroad Safety Act ("FRSA") authorizes the Secretary of Transportation to prescribe regulations and issue orders for every area of railroad safety, supplementing laws and regulations in effect at the time of FRSA's enactment. 49 U.S.C. § 20103(a). Under delegation from the Secretary, the FRA enforces the regulations promulgated concerning track safety standards. 49 C.F.R. pt. 209, App. A. These regulations "prescribe[] minimum safety requirements for railroad track that is part of the general railroad system of transportation." 49 C.F.R. § 213.1.

> By "general railroad system of transportation," FRA refers to the network of standard gage track over which goods may be transported throughout the nation and passengers may travel between cities and within metropolitan and suburban areas. Much of this network is interconnected, so that a rail vehicle can travel across the nation without leaving the system. However, mere physical connection to the system does not bring trackage within it. For example, trackage within an industrial installation that is connected to the network only by a switch for the receipt of shipments over the system is not a part of the system.

49 C.F.R. pt. 209, App. A; see 49 C.F.R. § 213.3(b)(1) ("[Part 213] does not apply to track: Located inside an installation which is not part of the general railroad system of transportation[.]").

Section 213.37(c) provides, in relevant part: "Vegetation on railroad property which is on or immediately adjacent to roadbed shall be controlled so that it does not--Interfere with railroad employees performing normal trackside duties[.]" 49 C.F.R. § 213.37. Defendant contends § 213.37(c) is inapplicable here because the Ozburn-Hessey track is an out-of-service industry track and therefore is not "part of the general railroad system of transportation" as defined in 49 C.F.R. pt. 209, App. A and 49 C.F.R. § 213.3(b)(1). The Court agrees.

Plaintiff was indisputably injured on industry track. Under 49 C.F.R. pt. 209, App. A, trackage within an industrial installation that is connected to the network only by a switch for the receipt of shipments over the system is not part of the general railroad system of transportation. Section 213.3(b)(1) specifically provides that Part 213 does not apply to track "located inside an

19

installation which is not part of the general railroad system of transportation." Thus, the Court concludes that § 213.37(c)'s provisions do not apply to the Ozburn-Hessey industry track.[3]

Moreover, the evidence establishes that the Ozburn-Hessey sidetrack was "red-tagged" as out-of-service. The track, when Plaintiff was injured, was not utilized for the movement or storage of rolling stock or freight traffic. To be sure, workers frequently "tied up" their equipment on the sidetrack and a "tamper" had been parked on the sidetrack for "years and years." Yet, Plaintiff has not presented any evidence that the track was actually in service. Plaintiff cites railroad gangs' routine use of the track, other equipment on the track, maintenance of the way and rail cars would travel down the track periodically and offices were located down the track. Plaintiff's contentions, however, are not supported by the record. Plaintiff does not identify whose "offices" these were nor how that fact establishes that a track is in service. Nor does Plaintiff show how using the track for maintenance of way and tying up equipment establishes that the track was in service for receipt of freight. Further, Price did not testify that railcars routinely came down the track and, in fact, stated that the sidetrack was "blocked and red tagged out of service." Nor has Plaintiff presented any expert evidence establishing that side tracks like Ozburn-Hessey are considered part of the general railroad system of transportation.

Accordingly, the Court concludes that Plaintiff's negligence per se claim is without merit.

### F. NEGLIGENCE CLAIM

---

[3]Plaintiff's citation to 62 Federal Register 36138, 1997 WL 364167, is misplaced as that provision was mentioned in context of proposed rule revisions and was not codified in the Code of Federal Regulations. Further, the FRA opined, "This notice proposes to leave the application section of the Track Safety Standards unchanged."

Plaintiff contends that Defendant owed a general duty to remove the vegetation because it was foreseeable that its employees worked on the Ozburn-Hessey sidetrack, that Defendant actually undertook the obligation of removing vegetation from the track and that Defendant's non-delegable duty extends to the property of third parties. Plaintiff also contends that but for the vegetation, Plaintiff would have been able to walk on a toe-path along the rails instead of being forced to walk between the rails and would not have tripped on the rail as a result.[4]

Defendant admits that its duty to provide Plaintiff with a reasonably safe place to work and its responsibility for maintaining the track and roadbed in its control. Defendant, however, contends that it did not owe a duty to maintain vegetation on an out-of-service industry track. Defendant asserts that it neither owned nor controlled the area where Plaintiff tripped and Plaintiff has not articulated any law or guideline, separate from 49 C.F.R. § 213.37, that requires Defendant to maintain vegetation alongside such a track. Defendant also contends that excessive vegetation did not cause Plaintiff to trip.

As to Defendant's contention of lack of ownership or control of the area where Plaintiff tripped, the Court earlier concluded that Gennette's declaration and attached documents are inadmissible. Defendant has not presented any other evidence establishing the ownership of the Ozburn-Hessey sidetrack. Accordingly, Defendant's argument lacks merit.

Next, Defendant contends that Plaintiff has failed to establish that Defendant had a general duty under FELA to maintain vegetation on out-of-service industry track. Plaintiff alleges that

---

[4]Plaintiff also contends that Defendant admitted in its Answer that the track and roadbed were under its management, maintenance, operation and control and Defendant had a duty to maintain the track in a proper and safe condition and to provide Plaintiff with a safe place to work. This contention was previously addressed by the Court.

Defendant had "an internal policy that mirrored the federal policy that mandated that that vegetation 'shall' be removed." (Docket Entry No. 37 at p. 21). However, Plaintiff has not presented any proof that Defendant had such a policy, written or otherwise, pertaining to maintaining vegetation on out-of-service industry track. In response to Defendant's interrogatory No. 10 asking Plaintiff to identify any duties, regulations, guidelines, or standards that he believed Defendant violated, Plaintiff only identified 49 C.F.R. § 213.37. Nor has Plaintiff presented any expert proof establishing such a duty under FELA. Instead Plaintiff relies on the testimony of non-management employees, Larry Peacock and Dimitre, and Price.

To be sure, Peacock, a backhoe operator, agreed that there should not be vegetation along the rail as it posed a safety hazard and deemed the Defendant to be responsible for a toe path for workers to walk safely along the rails. (Docket Entry No. 37, Exhibit 4, Peacock Deposition at pp. 8, 10, 15, 49). Peacock also agreed that the rails and the wooden ties between the rails present a trip hazard, but testified that it was not unusual for a worker to walk down the center of the track. Id. at pp. 10-11, 46. Plaintiff also cites the testimony of Dimitre. Dimitre testified that per policy he inspected industry track once quarterly. Id., Exhibit 6, Dimitre Deposition at p. 43. However, because the Ozburn-Hessey sidetrack was out-of-service, Dimitre would not inspect the entire length of the industry track to the Ozburn-Hessey parking lot, but instead would only inspect from the switch point to the clearance point. (Docket Entry No. 56, Exhibit 2, Dimitre Deposition at pp. 71-73). Dimitre agreed that if workers and equipment traveled down the industry track and vegetation posed a trip hazard then Defendant would be responsible for removing the vegetation. (Docket Entry No. 37, Exhibit 6, Dimitre Deposition at p. 80). Dimitre also testified that he was not required to park in the Ozburn-Hessey parking lot, but did so because it provided easy access to the mainline switch.

Id. at pp. 61, 74, 80. Dimitre further testified that it was not against the safety rules to walk down the middle of the track and did not think walking down track posed a trip hazard. Id. at pp. 65-66.

Price testified that it was not Defendant's responsibility to clear a toe path and that Defendant's policy was to check mainline track once a week and industry track quarterly. Id., Exhibit 7 Price Deposition at pp. 12, 22-23, 47. Price testified that there was no need to remedy excessive vegetation along the Ozburn-Hessey track because the track was out-of-service and not in use. Id. at p. 45. Price agreed that had the Ozburn-Hessey track been in use then it would have been responsible for the vegetation to be cleared along the track. Id. at pp. 49-50. According to Price, the main reason to stay out from between the rails was because of train traffic, not tripping hazards. Id. at p. 14. Price also thought it was foreseeable that workers would park at the Ozburn-Hessey parking lot and would use the industry track to work on the mainline track. Id. at pp. 48-49.

The Court concludes that Plaintiff has not presented evidence to establish that Defendant owed a legal duty under FELA to maintain vegetation on out-of-service industry track. Assuming Plaintiff has established such a duty arose based on Defendant's knowledge of workers' "tying up" their equipment on the Ozburn-Hessey sidetrack and accessing the industry track from the Ozburn-Hessey parking lot and that such duty was breached, Plaintiff has failed to show that such breach caused his injury.

Plaintiff's normal job duties required him to walk between the rails on a daily basis. Walking down the middle of a track was not uncommon nor was it unreasonably dangerous. The track was out-of-service and void of any train traffic. Plaintiff admitted that the rail was no higher than any other rail that he has worked on in the past. There was not any evidence of a defect in the rail or the ties. Plaintiff did not trip on any vegetation. In fact Plaintiff stated that he could not discern on what

23

he tripped. Plaintiff admitted that he tripped while he was looking up at the 18-wheelers in the parking lot. Perhaps, if Plaintiff had tripped on a defective condition on the track itself he could establish causation. Plaintiff, however, has not presented any evidence that Defendant's failure to maintain the vegetation on an out-of-service industry track caused him to trip on a non-defective stretch of track. While a relaxed standard of causation applies, Plaintiff must show more than just injury. <u>Gottshall</u>, 512 U.S. at 543. Here Plaintiff's claim is too attenuated.

Accordingly, the Court concludes that Plaintiff's negligence claim is without merit.

For the reasons stated above, the Court concludes that the Defendant's motion for summary judgment (Docket Entry No. 33) should be granted; Plaintiff's motion for partial summary judgment (Docket Entry No. 36) should be granted as to the issue of mitigation, but otherwise denied; Plaintiff's motions to strike (Docket Entry Nos. 45 and 52) should be granted in part and denied in part; and Defendant's motion for permission to respond to the issue of mitigation of damages (Docket Entry No. 49) should be denied.

An appropriate Order is filed herewith.

**ENTERED** this the ___12th___ day of October, 2010.

WILLIAM J. HAYNES, JR.
United States District Judge